Jordan, Elizabeth Boddy, Katrina M. Kuhn. Are both parties ready to proceed? Yes, I am. Ms. Boddy, you may proceed. Good morning, Your Honors. I represent the appellant, Steven Jordan. Steven Jordan presented newly discovered evidence from one of the intended victims, Calvin Stewart, excluding him as one of the offenders. The trial court committed manifest error in finding Calvin unbelievable due to his delay in coming forward without considering the substance of Calvin's unimpeached statement and without examining how a new jury would evaluate the state's case in light of the new evidence. The evidence against Steven is far from overwhelming. Steven's conviction rests entirely on identification evidence. There is no physical evidence or forensic evidence, and Steven did not give a statement. Of the eight eyewitnesses who testified at Steven's trial, four of them never identified him. Casey Stewart told an officer that he didn't see Steven that day. He saw Derek, Steven's brother, in an SUV that resembled Derek's. Patsy Harris didn't see the shooters and didn't identify Steven, but she thought that Steven's older brother, Teola, could have been one of the shooters. James Fultz, one of the two intended victims, did not identify Steven. He identified Derek to the police as well as Kendrick Elliott. Lillian White could not identify anyone. The remaining four eyewitnesses identified Steven, but three of them based their IDs on hearsay, not their personal knowledge, and all three of them redacted their identifications at some point. A responding officer interviewed Gregory Warfield in his front yard immediately after the shooting in front of and within earshot of all the other witnesses, including Ronnie Green and Destiny Anderson. An officer testified that witnesses could have overheard what Gregory told him, and that's exactly what Destiny and Ronnie said occurred. Destiny Anderson recanted her identification at trial. She said she couldn't see the shooters and she named the Jordans only because she heard Gregory Warfield, her uncle, name them to the police. Destiny in turn told Vivian Warfield that the Jordans were the shooters. The day after the shooting, Vivian, who's hearing impaired, viewed a photographic array without an interpreter. She testified that the police asked her if she recognized anyone in the pictures. She knew the Jordans, so she selected their photos. She said she couldn't see the shooters' faces, though. Ronnie Green initially denied knowledge of the shooting, and then he implicated the Jordans, and then five days later, he recanted his ID. He explained to an officer that he only repeated what Gregory Warfield told the police. It wasn't until about three months after the shooting that Ronnie formally and officially identified Steven. So only one witness, Gregory Warfield, out of the eight who testified at trial, has consistently identified Steven as the offender. Six out of eight of the witnesses did not identify Steven at trial. This is the identification evidence on which Steven's conviction rests. The flaws in the identification evidence are real and they're indisputable. In contrast to this weak identification evidence, Calvin Stewart, one of the intended targets of the shooting, has recently come forward saying that Steven is not one of the offenders. Calvin testified at an evidentiary hearing that he knows Steven, clearly saw the shooters' faces, and he knows Steven isn't one of them. Calvin's testimony meets the test enunciated in Ortiz and justifies a new trial. First, his affidavit is newly discovered. Calvin immediately left the scene after the shooting and avoided involving in this case because he had a poor relationship with the police and didn't want to get involved. Even the state never made contact with him. The record confirms that he was unavailable and that no amount of due diligence could have produced his testimony earlier. An investigator testified at a hearing on a motion for a new trial that Calvin had threatened him and rebuffed the investigator's efforts to interview someone with possible information on this case. This court relied on these facts to find Calvin's affidavit's newly discovered evidence in Teola's PC appeal. At the evidentiary hearing in the instant case, the defense apprised the lower court of this court's decision in Teola's PC appeal that Calvin's affidavit was newly discovered. Next, Calvin's affidavit is material and non-cumulative. Calvin provided an account of the shooting where Steven isn't the shooter. The jury did not hear any evidence like this from the victim who said, I know Steven, I saw the shooters' faces, and I know Steven wasn't one of the shooters. This is compelling, exculpatory evidence that the jury never heard. Calvin's testimony goes to the ultimate issue in this case, the identity of the shooters, and is probative of Steven's innocence. It's difficult to see how exculpatory testimony from a victim wouldn't raise new questions for the trier of fact. In fact, this court in Teola's PC appeal found that Calvin's affidavit was material and non-cumulative. Finally, Calvin's testimony is sufficiently conclusive so that it would probably lead to a different result on retrial. In rejecting Calvin's testimony, the court didn't consider the substance of what he had to say. Rather, the court dismissed Calvin out of hand due to his delay in coming forward. The court didn't believe Calvin's explanation, but the court's finding was based on its own subjective belief and not the evidence. The only evidence about Calvin's delay in coming forward came from Calvin himself. He offered a reasonable and unimpeached reason for not coming forward sooner. He said that he had a strained relationship with the police, we know that he had legal troubles for which he ultimately served eight years in prison, and he did not want to get involved in this case. It's not unheard of for a witness to avoid involvement in a criminal case, especially where he could have been arrested and charged in connection with the offense. After all, at least two eyewitnesses said they saw Calvin fire a gun. So perhaps that's why they didn't want to name Calvin to the police. The witness's reluctance to name Calvin corroborates his reasonable and unimpeached reason for not coming forward earlier. While a delay in coming forward may be relevant, it's not dispositive of a witness's credibility. It alone doesn't render a witness inherently incredible. If so, few actual innocence claims based on new testimony would succeed. Yet the court dismissed Calvin altogether because of his delay in coming forward, even though the state did not discredit the substance of his exculpatory testimony. The substance of Calvin's testimony was almost irrelevant to the court, and the court's comments at the hearing demonstrated that it paid little, if any, attention to what Calvin had to say. The court initially dismissed Stephen's post-conviction petition because it erroneously believed that Calvin didn't see the shooters or the shooting. The defense had to point out in a motion for reconsideration that Calvin unequivocally said that he saw the shooters' faces. I mean, that's the factual basis of Stephen's actual innocence claim, and the court got the fact wrong. The substance of Calvin's testimony didn't matter to the court because it had erroneously concluded that Calvin's delay in coming forward, even though it was reasonable and unimpeached, rendered him inherently unbelievable. In ruling on the post-conviction petition, the court was tasked with predicting whether a new jury, upon hearing the new evidence, would probably reach a different result. This necessarily required the court to evaluate the substance of Calvin's testimony, but the court did not engage in this comprehensive analysis. It is, however, probable that a trial refact would reach a different result on retrial. In an identification case like this, exculpatory testimony from the victim is arguably the most persuasive evidence of actual innocence. Calvin's credible testimony directly contradicts the state's evidence on the key issue in this case. It places the state's weak identification evidence in a different light and undermines confidence in the jury's verdict. Indeed, on retrial, evidence of Stephen's innocence would arguably be stronger than evidence of his guilt. Certainly, these facts warrant closer scrutiny. A better determination of Stephen's guilt or innocence would be made by a trier fact that has afforded the opportunity to hear Calvin's exculpatory testimony and balance that testimony against the other identification evidence. Stephen has met the criteria to warrant a new trial based on newly discovered evidence. The judge committed manifest error in not granting a new trial, and therefore this court should reverse the lower court's findings and remand the cause for a new trial. And I welcome any questions at this point. Justice McLaren, your questions? I thought it was Zena first, but I'll go. I'm prepared to ask a question if you want, Justice McLaren. Thank you. Okay. Counsel, you indicated that the court's conclusion regarding Calvin was based on its own subjective belief rather than the evidence. And I'm not sure exactly what you meant, because it is the court's job at this stage of the proceedings, is it not, to assess the credibility of the witness. Isn't that correct? That is true. Well, I'll let you answer, but I add just another part to this. So not only did Calvin wait 12 years, he did have a prior record as well. So certainly the court was permitted to take not only the length of time he waited, but his prior record into account in assessing his credibility. Isn't that correct? That's true. All right. And you were going to add something? I was going to say the problem is that the state, besides the fact that he had a prior record, the state did not impeach his reason for coming forward. And his reason for coming forward was reasonable and understandable. Also, reasonable and understandable that he didn't want to have anything to do with the police. Is that what you're referring to? Hello? Hello? You seem to have lost her. Hold on, everyone. Okay. I wondered. I didn't know if I'd lost my connection or what. We're paused right now, Justice Zenoff. Thank you. Counsel, the court's conclusion with respect to Calvin, you indicated in your argument this morning, was based on the court's own subjective belief rather than the evidence. And I'm a little bit unsure about what you meant, because it is the court's job to assess credibility of witnesses at this stage of the proceedings. And not only did Calvin wait 12 years, but the court certainly could have taken into account that he had a prior record. Isn't that correct? That is correct. The court could consider his prior record. The problem with the court's finding is that it was not based on the evidence. The state, other than offering the fact that he had a prior record, the state didn't impeach his reason for coming forward sooner. Further, the court never got to the substance of Calvin's testimony. The witnesses delaying coming forward isn't the only factor affecting his credibility. And the court, in order to balance Calvin's testimony against the trial identification evidence, the court necessarily had to consider the substance of his testimony. But the court dismissed him out of hand because it found his delay in coming forward was unbelievable, which was an unreasonable finding, given the fact that the state never really impeached his reason for coming forward. And his delay in coming forward was reasonable, given the fact that even because of his prior record, he did not want to get involved in this case. And it's possible he did not want to get involved because he could have been arrested and charged in connection with the offense because there was evidence that he also fired a gun. I don't have any other questions of counsel at this time. All right. Justice McClaren. Yes, thank you. Wasn't his name on the witness list that was handed over in discovery? His name was on the witness list. His address was not. His address was listed as Aurora, Illinois. And as this court found in Teola's post-conviction appeal, the defense did exercise due diligence in trying to locate him, and the court said that no amount of further diligence would have produced his testimony earlier because he made himself unavailable. I mean, even the state could not make contact with him, and I'm sure the state would have exhausted all of its resources to bring the victim in to testify in this case, and it never made contact with him. Is the witness a convicted felon? He is. So that's the reason why he would not want to be around when the police arrived, because he was a convicted felon in possession of a firearm? Well, I think that's one of the reasons he also had legal troubles at the time, and shortly after this offense he was convicted of a drug case, and he spent eight years in prison. And I think there's also a possibility that he could have been arrested in this case, not just for possessing a weapon but for actually firing the weapon in this case because at least two witnesses told the police officer that they saw Calvin Stewart fire a gun as well. And how long did it take for him to come forward? It took him 12 years after the offense, and it was shortly after he was released from prison that he came forward and signed an affidavit. Is the ability to sign affidavits precluded while one is in prison? No, but I think he made himself unavailable to the defense, and the defense could not have gotten his testimony, certainly not by the time of trial. When does the statute of limitations run on a possession of a firearm by a felon? I don't know, but he could have been charged with attempt murder in this case if he did fire his weapon, and the statute of limitations, I would say, run on a gun. Explain how he could have been charged with it, please. Well, there was evidence that he fired a gun during the shooting, and one witness thought that maybe he could have fired first. So if he fired at the offenders or at the witnesses, and if he fired first, then he could have been charged with attempt murder. Do you understand the difference between innocence and not guilty? I do. Okay. He doesn't indicate in his proposed testimony as to establishing that a third party, other than the defendant, was the one who actually shot at him. And so I'm suggesting to you that when you say innocence, you're not necessarily establishing innocence because you are using a negative to affirmatively establish what you call innocence. When I suggest to you that what you're really doing is you're attempting to argue that were this trial held again, that the fact that he claimed that it wasn't the defendant would overwhelm the jury to the extent that they would then find that Mr. Warfield's testimony was not credible or it would raise a reasonable doubt. Am I correct? I'm actually not following you. Right now, we don't have to prove innocence. The question is whether it's probable that a new jury, upon hearing the new evidence, would reach a different result. So I'm not following. What other result is there other than another guilty? A not guilty? Right, a not guilty. Okay. We don't have to prove, he does not have to prove his actual innocence. The question is, would this evidence possibly change the result on retrial? I understand what you're basically saying, then, that this is a misnomer that when they say actual innocence, they mean that it's actual not guiltiness. You can call it what you want. It's an actual innocence claim. But we do not, at this point, have to prove his actual innocence. We just have to prove that it's probable that a new jury, upon hearing this exculpatory evidence, would reach a different result on retrial. And when you consider the weak identification evidence that was adduced at trial and you balance that against this exculpatory testimony, it is probable that a new trial of fact that has afforded the opportunity to hear this exculpatory evidence would reach a different result. And did the witness indicate that he was aware of the fact that it wasn't the defendant because he looked at a photo array and determined that it wasn't the defendant, or was it because he knew the defendant and the defendant wasn't present on the day in question? He knew the defendant. He looked at the shooter's faces clearly, and he knew it wasn't the defendant. I have no further questions. Thank you, Justice McLaren. Ms. Boddy, you say in your reply brief that eyewitness testimony, and you repeated this argument today, that eyewitness testimony is refuted by the best possible evidence, testimony from one of the attended victims. Do you have a case that says that testimony from one of the attended victims is better than eyewitness testimony? I don't believe I cited one, but Calvin Stewart was in a position to view the offenders. He was in a superior position to view the offenders, and he knows what Stephen looks like. He knows Stephen. He got a clear look at the shooter's faces, and he said Stephen isn't one of them. So in the context of this case, there is no better evidence of actual innocence that the defendant could have presented. What does manifest error mean? What is manifest error? Obvious error, clear and obvious error, unreasonable, arbitrary decision. So that's your argument. We would have to find that the trial court's decision in weighing Calvin's testimony was unreasonable. Yes, and I had to interrupt because the court didn't really weigh Calvin's testimony. It looked at his failure to come forward sooner and rejected it out of hand. The problem is that it didn't weigh his testimony. It didn't consider the substance of his testimony. So there was manifest error for two reasons. One, his credibility determination about his failure to come forward was unreasonable because it was not based on the evidence. And two, because the court never engaged in the comprehensive analysis it was required to engage in where it needed to balance the substance of Calvin's testimony against the evidence induced at trial. It never did that. Where was Calvin at the time of the trial? At the time of the trial, I don't know. I know only that he was... We know that his address was Aurora, Illinois. That's all we know. I don't know where he was. He wasn't in jail at the time. And would you agree that while the panel in Teola is persuasive, we're not bound by that decision, correct? You know, I don't know how this court could reach a different decision and say this affidavit, which is the same affidavit that was introduced in Teola's case, isn't newly discovered evidence and isn't material if it was in his case. I don't know how the court could reach a different decision. So, though it's not technically bound, I don't know how it could not reach a different decision. But, again, you would agree... Because it's the same facts. It's the same affidavit. You know, not that it has much weight, but at his sentencing hearing, Stephen's sister, Trina, testified that Stephen has learned from his mistakes that he, quote-unquote, needs to change, and he understands the mistakes that he's made. Nothing about he's actually innocent. He didn't do this. Should we even look at any of that portion of the record? No, and I don't think she was saying he learned from his mistake in this case. She didn't say he committed this offense. And his failure, he doesn't have to say anything. Right, it was vague. Right, it was vague, and I think it's inappropriate to read into that, and I think it's inappropriate to fault him at the sentencing hearing when he's not required to say anything to get up and stand and profess his innocence. No, but one would expect that a person who is facing a charge that he's actually innocent of would use and ask his lawyers to use every effort to find witnesses, which would be... And he did. Stuart. He did at the motion for a new trial. They sent out an investigator to try to find witnesses who had information on this case, and that's when one of the investigators came across Calvin, who threatened him. The defense did try to find information to prove that he was innocent. And was that testimony presented by the investigator? Right, at the motion for a new trial, and it's that evidence that this court in Teola relied on to find that the defense did exercise due diligence in trying to produce Calvin's testimony and that no amount of further diligence would have produced him sooner because he had made himself unavailable and threatened the investigator. All right. Thank you very much, Ms. Boddy. Ms. Coon. Good morning, Your Honors. Thank you, Counsel. Katrina Coon for the people of the state of Illinois. May it please the court. This court has already affirmed on direct appeal the convictions of defendant and his two brothers for attempted murder for shooting at least seven people on the street in Aurora in 2004. Now, this court is well aware of the facts of this case. They've been set out by opposing counsel. On direct appeal, this court found that two occurrence witnesses, Gregory Warfield and Ronnie Green, immediately identified Stephen Jordan at the scene as one of the shooters. And in 2017, defendant filed a post-conviction petition asserting actual innocence. The court is reminded that this is not a second stage post-conviction proceeding. The contents of affidavits are not accepted as true. This appeal is following a third stage evidentiary hearing, which is reviewed for manifest error. Stewart's account must be evidence that was discovered since the trial and that defendant could not have discovered sooner through due diligence. As this court has noted this morning, Stewart was disclosed as a possible state witness. He testified at the hearing he was incarcerated in 2008 and spent eight years in prison. However, Stewart does not account for his whereabouts between 2004 and 2008 when the trial was occurring. The question is whether the defendant could have obtained this information. Due diligence requires that some effort be taken prior to trial to procure Stewart's account. And defendant on appeal points to Calvin Stewart's self-serving attestations that he was not going to cooperate. He wasn't contacted by the police or the state. This court has noted the testimony by the private investigator in the post-trial motion. However, Calvin Stewart does not state in his affidavit that he was anything regarding to that private investigator. He simply makes a general boilerplate vague claim that he was never contacted by anyone and that he would not have cooperated. He does not provide any further facts as to that. And this, the court has discussed already the 2016 order in the Teola Jordan case. And, you know, Stewart claims that he could not have provided anything before 2016 in this case. However, he was able to provide an affidavit in 2012 in the post-conviction proceedings of Teola Jordan. You know, he said that he would have, he testified here, he testified in this hearing that he had known defendant and Derek Jordan for 30 years. And in the Teola Jordan case, he averred that he saw the shooter's faces clearly and that he had known Teolia for 18 years and that Teolia was not one of the shooters. So if as Stewart, you know, claimed in 2012, he saw the faces clearly and he'd known Stephen Jordan, he now claims he knew Stephen Jordan for 30 years. Why couldn't he then have offered the same averments in 2012 as to Stephen Jordan? He claims that this is the first time he's able to do it. And that simply is not credible. The trial court here was at the evidentiary hearing was the finder of fact as to Stewart's motivation for coming forward. The trial court found that Stewart had no good reason not to come forward earlier. I cited in my brief to Carter, the trial court could consider the long lapse of time in this case between the shooting and Calvin Stewart's decision to finally provide an affidavit here as to Stephen Jordan. And the trial court certainly could consider Calvin Stewart's criminal record in determining his credibility. And nothing in Stewart's affidavit has to be taken as true. Again, this is not a second stage proceeding. This is a third stage proceeding. And, you know, as as to the the ultimate determination of whether the evidence was of such conclusive character, that Stewart's version of events would lead to a different result. You know, this we know the entire extent of what Calvin Stewart's, you know, purported testimony would be. You know, this is not a proceeding at the second stage where we take everything as true. The trial court considered everything that Calvin Stewart had to say. He was he was cross-examined. You know, we have everything out there. And just as at a bench trial, substantial deference needs to be paid to the trial court who observed Calvin Stewart's demeanor. Listen to his representations. The trial court indicated he was familiar with the Teolia case and was well versed in all of the facts. And the trial court listened to Calvin Stewart's representations that he did not know the Jordan brothers had been charged in the case and that he could not have come forward sooner. And the trial court could determine that Calvin Stewart, you know, has become less credible with the passage of time and not more credible. You know, defense counsel, my opposing counsel this morning has restated much of the evidence and defendant contends in his brief that he, you know, that this court should make a finding contrary to the trial court that all of Calvin Stewart's testimony at the evidentiary hearing was credible. And respectfully, that is not what this court is is able to do at this point. You know, the test is not whether Calvin Stewart's new newly found version of events refutes the state's case. The test is whether the test is not whether the state's case has a strong foundation. And in conclusion, you know, the defendant has now had a trial. He said a direct appeal at which his conviction was affirmed by this court. And this court on direct appeal, in fact, described the evidence that was presented at trial as overwhelming and not closely balanced. You know, a defendant has also had a full three stage post conviction proceeding. The trial court's finding of Stewart's lack of credibility is not subject to review at this point. And the denial of the petition is reviewed only for manifest error. Accordingly, your honors, in conclusion, the people ask this court to affirm the trial court's judgment. And I'm available for any questions. Just McLaren. Thank you. You address the issue of newly discovered evidence insofar as a statement that has never been made versus a statement that was recanted. Is there is one more credible than the other. Are you talking about the the the testimony at trial or are you talking about Calvin Stewart? I'm talking about Mr. Stewart's lack of testimony in the trial and compare his credibility to someone who did testify and who then recanted their testimony. Is one more believable than the other or are they equally believable or is it for the trier of fact to make that determination? Well, well, starting with what the witnesses who testified at trial recantations are inherently unreliable. I think we have some we have witnesses who who were who did not recant. We have I think Gregory Warfield and we have whether whether that is the same as Calvin Stewart. I think Calvin Stewart's credibility has to be determined at the time he comes forward. He came forward. He chose to come forward at this point. The trial court did not find him credible. And, you know, that that is that is how his credibility should be determined. That's my answer, Your Honor. How do you respond to the argument made by his body that the trial court in determining that the witnesses testimony was incredible is an indicator that he didn't weigh the evidence submitted? Well, my my response to that is twofold. First, the trial court, you know, whether it's a bench trial or here at an evidentiary hearing, you know, is is presumed to have applied the law correctly understood and understood the law. Here we have the trial court's findings and rulings after the after the evidentiary hearing. And the trial court did say that he considered all of the testimony of Calvin Stewart in light of the you know what had already transpired in in these defendants cases and that he did not find that it was credible. The trial court is presumed to have understood the test for actual innocence and there is no basis on the record to to reverse on that on that basis. Is there a distinction between determining that something is inadmissible and therefore it may be presumed or concluded that the judge did not consider the weight of the evidence vis-a-vis a situation where the judge indicated that the evidence or testimony was incredible? Well, here, here that the court. The court did consider the content of Calvin Stewart's testimony. And it's exactly because his his story was so, you know, was so exculpatory. And so, you know, he like as was pointed out by the panel. Previously, he didn't say I saw the shooters and it was Joe Smith. And not one of the Jordan brothers. He just simply said, you know, it wasn't it wasn't defendant. It wasn't Stephen Jordan. The trial court did not believe took into account as it can the length of time in the circumstances of Calvin Stewart's affidavit and the trial court did not find it credible that he would have sat on that on that information for so long, if it was actually correct. And that is a credibility determination that I that I would say is left to the trial court. Thank you. I have no further questions. Thank you, Justice. Thank you, just one council. I believe opposing Council really focused on the number of witnesses who Testified at the trial and Correct. And I'm not sure she said it exactly this way. But what I gleaned was the total number of witnesses of the total number of witnesses who testified at trial over half never identified Stephen As the shooter. There were a number of witnesses. I'm sorry. Well, and then justice McLaren was talking about the recantation then of those who did those few who did there were recantations How do you respond to that. Well, there were a number of witnesses who testified, you know what what it boils down to is there were two witnesses that Defendant concedes, you know, in these proceedings who who basically, you know, it basically boiled down to two witnesses were Were the key witnesses and that was that was Gregory Warfield and Ronnie green who immediately identified the defendants and their, their identifications of the defendants were were confirmed and corroborated by testimony of police who who can confirm that they were identified directly, you know, Immediately after the shooting. You know, as, as this court as well aware that it, you know, it only takes one one witness to to convict if that testimony is is credible and identifies the defendant and that is what we have here. Is it, is it a perfect case. No. Um, you know, the, the, the reasons for the other defend the other witnesses that were pointed out by opposing counsel, the reasons for their, you know, their You know, going back on their testimony. We can't speculate as to those and those that is actually not really before us. But in terms of the weight of the testimony against the defendant. As this court as this court stated and direct appeal. The evidence was deemed to be Overwhelming And and that is that is what this court should should take into consideration. Thank you. I don't have any other questions. Thank you. Just one question. As you mentioned, Identification by a single eyewitness is sufficient to convict. And here the identification was made in broad daylight. Correct. I believe so. Yes. It was early in the afternoon or 315 in the afternoon, the shooting on June 22 2004 correct Yes. And how far away was working with them. The defendant and it's The other defendants when the identification was made or when the shooting occurred. I'm sorry, Your Honor. I was having a little bit of trouble hearing you. You're asking how far Was Warfield from the defendant and his companions. Um, I believe Warfield was next was with the group that was next to the residents. Um, I don't know right off hand how far away Warfield was And he testified didn't didn't Warfield testify that the group was walking towards him. Before the shooting. Yes. Right. Thank you. That's all I have. Miss body rebuttal. I just have a few points. The state said that the trial courts credibility findings are not subject to review and I strongly, strongly contest that Well, you do apply the manifest erroneous standard that standard isn't a rubber stamp this court still has to review the courts factual Findings and the courts factual findings were unreasonable. Contrary to what the state said we actually have evidence in the record refuting Refuting the fact that the judge probably apply the law and consider the substance of Calvin's testimony because when the court originally denied the petition. It denied the petition because it thought Calvin said he didn't see the shooting and didn't see the shooters. I mean that that would be factual basis of Steven's actual innocence claim and the court didn't understand the facts, probably because he wasn't paying attention to what Calvin said because it was focused solely on his delay in coming forward. The judge was required to balance his testimony Calvin testimony against the trial evidence and it's important to note that the judge that denied the petition is not the same judge that presided over Stevens trial. So the judge never heard those witnesses testify. The Defendant does not in a PC case have to prove the identity of the real offenders, the state and the judge faults Stephen or Calvin for not identifying and naming the real offenders. That evidence isn't required. Calvin testified to a sculpted Tory evidence that he saw the shooter spaces and knows that Stephen isn't one of them. That's enough. The Identification evidence that the state said that one ID is sufficient to convict and that's true. Generally, that is true. However, the evidence in this case is far from overwhelming And this court found that until as a PC appeal. It said that the evidence identification evidence in this case is far from overwhelming. It is flawed only one out of eight Eyewitnesses consistently identified him and of the three who redacted their IDs. They provided reasonable explanations for why They initially identified the Jordans they base their initial IDs on hearsay and it's when you think about what happened in this case, it's total totally understandable when you think that a cop came And interviewed the witnesses all in front of each other. Of course, they could overhear what Gregory Warfield said And so they base their initial IDs on hearsay and at trial they two of them said I never actually saw the offenders. It happened so quickly. I wasn't wearing my glasses. We all ducked down. I didn't, I couldn't see them. When you consider the weakness in the identification evidence against the sculptor evidence that Calvin presented it is probable that a new trial fact would reach a different result in this case. Therefore, the judges findings were manifestly erroneous and this court should award a new trial. Justice McLaren. I have no questions. Thank you. Justice, you know, I have no questions. I just have one question. You talked about the the recantations Recantations when a person recants isn't the prior effect in the best position to decide whether or not the recantation is Really a truthful statement where that person doesn't provide an explanation to the police at the time they make an identification, but later on at trial gives an explanation as to why they're recanting The prior fact is right in the in the best position. But we don't have here just a simple recantation. We have a recantation that the witnesses explained and their explanation is reasonable when you consider how the interviews went down in this case. It's reasonable that they Did they say at the time. I don't know who that person was, but so and so said it was the defendant. Ronnie green. Yes. Ronnie green told an officer. I only identified them because I heard Gregory Warfield. Tell an officer on the scene that they were the shooters and then That was their testimony at trial. Correct. Right. Okay. All right. That's all. I mean, we do have evidence that that Ronnie green did tell an officer five days after the shooting that he only named the Jordans because he overheard Gregory tell the responding officer. Thank you for thanks both parties for their arguments today. The case will be taken under advisement. A written decision will be issued in due course. Thank you. Thank you.